AMANDA McGOLDERICK, Respondent, v. WABASH RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 31, 1918.

1. **NEGLIGENCE: Personal Injuries: Independent Contracts.** The statute imposes on the railroad the duty to keep down the undergrowth along its right of way, and it cannot escape liability for injuries to persons caused by the negligence of one who had a contract to do such work.

2. ———: **Independent Contractor: Power of Corporation.** Notwithstanding a person, who causes an injury, is an independent contractor, he will be regarded as the servant or agent of the corporation for whom he is doing the work where it is shown that the independent contractor in doing the work was exercising some charter privilege or power of the corporation, or is performing some duty imposed by statute upon the corporation.

3. ———: **Instructions.** While a person may have a reasonable length of time to use the untraveled portion of a highway for temporary storage of articles necessary to be put there to carry on the work, nevertheless what would constitute a reasonable time under the circumstances in this case is a question for the jury, and the court therefore properly refused to give an instruction to the effect that as a matter of law defendant had not overreached its right to use the highway for the storage of a grindstone for a reasonable length of time where it was shown that the grindstone has been in place for six hours.

4. ———: **Evidence.** Evidence that other horses had been frightened the day after at the same grindstone which caused plaintiff's horse to become frightened, run away and injure her, after the grindstone had been removed to another place, was properly admitted.

Appeal from Schuyler Circuit Court.—*Hon. N. M. Pettingill*, Judge.

*J. L. Minnis, N. S. Brown* and *Higbee & Mills* for appellant.

*A. D. Morris* and *Fogle & Fogle* for respondent.

BLAND, J.—This is a suit for personal injuries. Plaintiff recovered a judgment for three thousand ($3000) dollars, and defendant has appealed.

Defendant urges that a demurrer to the evidence should have been sustained. A disposition of this point necessitates a detailed statement of the evidence taken in its most favorable light to plaintiff. This evidence shows that on the 11th day of August, 1916, plaintiff and her little daughter went from their home to Glenwood, Missouri, and later in the day they returned. About the time she reached defendant's track on the return trip her horse became frightened at a grindstone situated about thirty-five (35) feet west, or on the opposite side, of the railroad track and about six (6) feet south of the traveled portion of the road. The evidence showed that one Martin had a contract with the defendant for cutting vegetable growth from its right of way for a distance of about six miles along the railroad in the vicinity of where the grindstone stood; that the stone that morning had been at another place and that Martin had requested defendant's section men to move it on their handcar, which was accordingly done, to the place where it frightened plaintiff's horse. Martin testified that he had the grindstone placed there for the purpose of grinding his sickle, which was being used in cutting off the right of way. The grindstone was placed there about 10:00 o'clock that morning. The accident happened about 4:00 o'clock of the same day.

The evidence shows that there was a wagon placed in the road between the grindstone and the railroad tracks. The grindstone was about eight feet west of the wagon. The stone was about 16 to 18 inches in diameter and stood on an iron frame about four feet high; there was a water funnel suspended above the

stone, a treadle attached to the frame with which to turn the stone, and a seat on the frame. It was an old grindstone and such a one as is commonly used by farmers. It belonged to Martin.

Plaintiff went to Glenwood about 2:00 o'clock in the afternoon in question and when the horse passed the grindstone on the way to town it shied at it and Martin, who was then grinding his sickle, started toward plaintiff when she hit the horse a lick and drove him by the grindstone and on to town. The grindstone was on the west, or opposite side, of the railroad from the town of Glenwood and the railroad at the crossing was located on ground about ten to eleven feet higher than the ground to the east. Plaintiff testified that when they arrived at a point, on the opposite side of the railroad crossing from the grindstone, where the horse could see over the apex of the embankment, he shied and whirled around and ran back for one hundred (100) feet where he stopped and began to eat weeds. When the horse became frightened and whirled around it threw plaintiff out of the buggy causing the same to run over her to her severe injury. A mail carrier came along after the accident and got into plaintiff's buggy and drove the horse by the grindstone. The horse again became frightened at it and the mail carrier hit the horse and made him go by. The horse was described as a very gentle horse, would stand without hitching and could be driven safely by a child. On the day following, the grindstone had been moved to Glenwood Junction and here two horses, being driven by a lady, shied at it.

It is urged by the defendant that Martin was an independent contractor and that its section men in placing the grindstone at the point in question were acting without the scope of their employment and were voluntarily doing a work of convenience for Martin. However, even if these things were true (matters we do not pass upon), we do not believe that defendant can escape liability in this case. It was the duty of the defendant to keep down the undergrowth along its right of way. This duty was imposed upon it by sta-

tute, section 3150, Revised Statutes 1909. Under these circumstances it could not escape liability for injuries to persons caused by the negligence of an independent contractor in doing the work, and therefore it was liable for the acts of Martin in placing the grindstone at the place in question. [Peters v. Railroad, 150 Mo. App. l. c. 735-6; Jackson v. Butler, 249 Mo. l. c. 365; 26 Cyc. 1562; 2 Elliott on Railroads (2 Ed.), page 866; Chicago Economic Fuel Gas Co. v. Myers, 48 N. E. (Ill.) l. c. 69.] In the latter case it is held that even though a person who causes the injury is an independent contractor he will be regarded as the servant or agent of the corporation for whom he is doing the work where it is shown that the independent contractor in doing the work was exercising some charter privilege or power of the corporation. And in the case at bar we believe that Martin was the servant of defendant in the cutting of the undergrowth on its right of way.

Defendant urges that this was an ordinary grindstone and it says that the leaving of such a grindstone at the side of the road is of common occurance and that there was no evidence tending to prove that the grindstone was calculated to frighten a horse and that the fright causing plaintiff's injury must have been caused by some freak of the horse in scaring at things of ordinary appearance. It has been often held that the placing of an object for an unreasonable length of time along the side of the road, such as this grindstone was placed, would reasonably be calculated to frighten an ordinary gentle horse. [Golden v. Railway, 84 Mo. App. 59 (where a number of boards were so placed); McClure v. Feldmann, 184 Mo. 710 (where a pile of refuse was placed near or on the highway); 33 Cyc. 1153-1154; Joyce on Law of Nuisances, sec. 255.] A white mortar box, eight feet long, three feet wide and one foot deep, placed on a highway, was held to be an object that would be reasonably calculated to frighten a horse. [Bloor v. The Town of Delafield, 69 Wis. 273.] A number of mail bags dumped from defendant's railroad train in close proximity to the

traveled portion of the highway that frightened plain-
tiff's horse was held to be evidence of defendant's
negligence. [Horr v. N. Y., N. H. & H. Ry. Co., 78
N. E. (Mass.) 776, where a horse became frightened at
a handcar placed on a farm crossing, there was evi-
dence of defendant's negligence; Baltimore & O. S. W.
Rd. v. Slaughter, 79 N. E. (Ind.) 186, where a horse was
frightened by a flag hung by defendant over a street,
there was evidence of defendant's negligence; Bemis
v. Temple, 38 N. E. (Mass.) 970.]

In rural communities horses are disposed to scare
or shy at objects of unusual character on a highway.
While it might be that a grindstone, such as the one
in this case, if placed other than in a public road or in
a position where grindstones are ordinarily found,
would not be calculated to frighten a horse, we can-
not say as a matter of law that the fact that a grind-
stone of the dimensions and appearance of this one,
located on a public road, along the traveled portion
thereof, and immediately on the opposite side of a rail-
road embankment in a position so that a horse coming
over the embankment would suddenly view the same,
was not calculated to frighten an ordinarily gentle horse,
and this is especially true where it is shown that this
horse shied at this grindstone on two other occasions
and that two other horses shied at it on the lay fol-
lowing. Common experience shows that a horse will
not become frightened at many objects if they are
situated in places where they are ordinarily seen but
should a horse without warning come on one of them
placed in the road, such a situation would cause great
fright even to a gentle horse.

While it is true that there was a wagon near the
grindstone, we cannot say as a matter of law that the
horse became frightened at the wagon instead of the
stone, or that it is impossible to tell at which. The wagon
was an ordinary object and such as horses are accustom-
ed to see in the road, and as before stated, this horse
passed the wagon and grindstone on two other occasions
and shied at the *grindstone*. The jury were required

under the instructions in this case to find that the horse became frightened at the grindstone and from the evidence we think the inference is strong, and such as to form a basis from which the jury could find as a matter of fact, that the horse shied or became so frightened.

Defendant complains that the court erred in refusing its instruction No. 4. This instruction told the jury as a matter of law that plaintiff could not recover because defendant had a reasonable right to use the highway at the place in question to temporarily place his grindstone outside of the traveled portion of the road. While it is held that a person may have a reasonable length of time to use the untraveled portion of a highway for temporary storage of articles necessary to be put there to carry on the work. (Golden v. Railway, supra), nevertheless, what would constitute a reasonable time under the circumstances we think would be a question for the jury, and the court in this case properly refused defendant's instruction to the effect that as a matter of law defendant had not overreached its right to use the highway for the storage of the grindstone for a reasonable time. It is said in Golden v. Ry., supra, l. c. 64, "Defendant had no right to leave them" (that is, the pile of boards) "in such position for a longer time than was necessary to have them taken elsewhere, and when it did so, it was guilty of maintaining a nuisance and is clearly liable for injuries caused thereby."

There is no ground for the attack made on plaintiff's instructions and the court properly refused those of the defendant as they amounted to a demurrer to the evidence.

Defendant complains that the court erred in admitting testimony tending to prove that two other horses had shied at the grindstone after Martin had taken it to the station at Glenwood Junction. The evidence on this point was that a lady on the day after plaintiff was hurt was driving two gray horses past Glenwood Junction and that on the west side thereof her horses

scared at this same grindstone. This evidence was competent [Golden v. Railway, supra, and cases therein cited.]

Complaint is made as to the admission of testimony, but we find no merit therein.

The judgment is affirmed. All concur.