CHARLES BUSH et al., by ARTHUR L. BUSH, Guardian and Curator, Appellants, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, March 5, 1912.

1. **RAILROADS: Frightening Teams in Highway: Liability.** While the mere opening of the .cylinder cock of a locomotive to permit the escape of accumulated steam and water, and the sounding of its whistle in the usual way, before starting up, after a stop at a station, is not negligence, ordinary care should be taken to first ascertain whether there are teams in the highway close at hand, and, if any are discovered, due care should be taken to prevent injury to persons by the frightening thereof.

2. ————: ————: **Suit Against Railroad and Engineer: Effect of Verdict for Engineer.** In an action against a railroad company and its engineer for the death of the driver of a team, caused by the team's becoming frightened at steam escaping from the cylinder cock of an engine and the sounding of the whistle thereon, even though the engineer was not negligent, by reason of being unable, because of his position, to see the team before letting off the steam or blowing the whistle, yet the fireman, on the side next to the highway, with an unobstructed view, was guilty of negligence, chargeable to the railroad company, in not looking for the team and communicating its presence to the engineer; and hence the trial court erred in granting the railroad company a new trial on the ground that, the jury having found that the engineer was not negligent, there could be no negligence on the part of the railroad company.

3. **NEW TRIAL: Verdict Against Weight of Evidence: Review of Order: Appellate Practice.** An order granting a new trial on the ground the verdict is against the weight of the evidence may be reviewed and reversed, where there is *no conflict*

in the testimony on the true issue and no substantial evidence in the record to support a verdict for the party awarded the new trial.

4. ——————: ——————: ——————: ——————: **Railroads.** In an action against a railroad company and its engineer for the death of the driver of a team, caused by the team's becoming frightened at steam escaping from the cylinder cocks of an engine and the sounding of the whistle thereon, the evidence tended to show that the engineer was in such a position that he was unable to see the team before letting off the steam or blowing the whistle, but that the fireman was in such a position that he could have observed the approach of the team, not more than thirty feet distant from the engine, and could have communicated that fact to the engineer before the cylinder cocks were opened or the whistle was sounded. A verdict was returned in favor of the engineer and against the company, which was set aside, on the company's motion, as being against the weight of the evidence. *Held,* that, in view of the fact that the fault of the fireman was shown and no effort was made to deny it, the act of the court in granting a new trial was an abuse of discretion, and hence it should be reversed.

5. **EVIDENCE: Presumptions: Failure to Call Witness.** No presumption should be indulged from the fact that an employer, sued for personal injuries, fails to call as a witness an employee who was connected with the accident, where it is not shown that he is alive, is still in defendant's employ, or is within the jurisdiction of the court.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*James P. Boyd* and *Frank W. McAllister* for appellants.

(1) It was defendant's duty to be on the look out for danger to travelers and whenever it became apparent to a reasonable mind that one was in imminent danger from the operation of the engine and the means were at hand to avoid inflicting an injury it was its duty reasonably to employ such means. Feeny v. Railroad, 123 Mo. App. 429; Chamberlin v. Railroad, 133 Mo. 587. (2) Although the engineer is in

the control and management of the engine, yet if the fireman is negligent in the performance of his duties under the supervision of the engineer and injury results the railroad company is liable. Suydam v. Moore, 8 Barb. (N. Y.) 358:. Railroad v. Hunt, 59 Vt. 294.

*Lee W. Hagerman* for respondent.

This court, under the evidence in this case, as shown in appellant's abstract and in respondent's counter abstract, will not say that the trial court's discretion in this matter was not sound and justly exercised. Van Liew v. Barrett Co., 144 Mo. 515; Rud v. Ins. Co., 58 Mo. 428; Milling Co. v. Bogges, 80 Mo. App. 297; Parker v. Cassinfamm, 130 Mo. 348; Thompson v. Railroad, 140 Mo. 144; Bank v. Wood, 124 Mo. 72; Miller v. Railroad, 217 U. S. 209.

NORTONI, J.—This is a suit for damages accrued to plaintiffs on account of the alleged negligence of defendants. The Missouri, Kansas & Texas Railway Company and its locomotive engineer, John Kenna, are jointly sued as defendants. Plaintiffs are the minor children of Joseph D. Bush, and prosecute the suit under the statute by Arthur L. Bush, their guardian and curator, for the wrongful death of their father, which, it is alleged, was occasioned through the joint negligence of the two defendants. On a trial of the issue, the jury awarded plaintiffs a recovery of $2500 against defendant, Missouri, Kansas & Texas Railway Company, and gave a verdict for defendant, John Kenna, its locomotive engineer. On the motion of defendant, Missouri, Kansas & Texas Railway Company, the court set the verdict against it aside and granted a new trial, and from this order plaintiffs prosecute the appeal.

Plaintiffs' father, Joseph D. Bush, was thrown from his buggy and fatally injured because of the al-

leged fright of his team through the negligent handling of defendant's locomotive by John Kenna, its engineer, and the fireman thereon. It is said defendant's railroad runs through the town of Stoutsville almost directly east and west. Broadway, a public thoroughfare in the town of Stoutsville, runs parallel with defendant's right of way and along and adjacent to the north side thereof. At one place in Broadway a bluff of considerable proportion extends across the platted street, so that it is impossible to drive over the same. In other words, a portion of Broadway, though platted and dedicated to public use, is not made into a street susceptible of travel, and, therefore, those passing east and west thereon drive around the bluff out of the platted street and upon defendant's right of way to within about thirty feet of its tracks. This portion of the thoroughfare, which by user and common consent has been extended over upon the railroad right of way to within about thirty feet of the railroad tracks, has been improved and occupied as a street for a number of years with the knowledge and consent of defendant railroad company. People constantly drive to and fro thereon identically as they do on other streets in Stoutsville, and it appears both defendants, the railroad, and John Kenna, the locomotive engineer, knew of this practice.

Defendant John Kenna is a locomotive engineer in the employ of defendant railway company and engaged in the service of operating the locomotive which "draws" a local freight train. On the day in question, defendant's local freight, with locomotive in charge of John Kenna attached, and headed to the east, was standing still on the tracks at the station when Joseph D. Bush, who was driving his team and buggy westward on Broadway, turned upon defendant's right of way, over the usual and customarily traveled road, to within about thirty feet of the locomotive. As Bush thus approached the standing locomotive, the

cylinder cocks were suddenly opened with the purpose
to move the train forward, and great clouds of steam
emitted therefrom. This sudden emission of steam,
together with the loud hissing and buzzing incident
thereto, frightened the team of horses, so that they
became unruly and were lunging and pitching with con-
siderable effort when defendant Kenna, the engineer,
suddenly sounded two sharp, shrill blasts of the whis-
tle attached to the engine. Upon the sudden sound-
ing of the two blasts from the whistle, the horses be-
came terrorized and plunged forward with such force
as to overcome all efforts put forward by Bush to con-
trol them, and threw him out of the buggy to a fatal
injury, and ran away. Mr. Bush was thrown against
the roadside with such force as to inflict a fatal injury
upon his head, from which he died two days thereafter.

As before said, both the railway company and its
engineer, Kenna, are pursued as defendants as for a
joint tort, but the petition contains averments of neg-
ligence with respect to other agents and servants of
defendant railway company as well. The theory of
the petition is, that both defendant railway company
and its locomotive engineer, Kenna, were negligent and
omitted to exercise due care, with respect to the rights
of Joseph D. Bush, when his position of peril was,
or might have been, seen, by emitting the steam and
sounding the two sharp blasts of the whistle, which
occasioned the team to precipitate him to his fatal in-
jury. Touching this matter, the evidence tended to
prove, and, in fact, is all one way to the effect, that
defendant Kenna was wholly unaware of the presence
of Mr. Bush on the roadway near by and of his situa-
tion of peril brought about through the fright of the
horses, occasioned from the escaping steam at the
cylinder cocks. As before stated, Mr. Bush was driv-
ing to the westward and the locomotive engine was
headed to the east. Defendant Kenna occupied his
place at the throttle on the right, or south, side of the

cab of the locomotive, and it was impossible for him to see the peril of Mr. Bush who at the time was to the northeast of him in the street. It is to be remembered the locomotive and train were standing at the station and had been so standing for as much as fifteen to twenty minutes. Upon receiving a signal from the conductor, defendant Kenna, the engineer, opened the cylinder cocks to permit the condensed steam and water to escape therefrom, as is usual before starting, and immediately thereafter sounded the locomotive whistle, as was proper enough under ordinary circumstances. Of course, there was no breach of duty on the part of either defendant in merely opening the cylinder cocks to permit the escape of accumulated steam and water or in sounding the whistle in the usual way before starting, for the railroad company may certainly do those things which are essential to the performance of its office in the customary way. But though such be true, the precepts of ordinary care for the safety of others in the thoroughfare would suggest that the cylinder cocks be not suddenly opened and the whistle sharply and suddenly sounded by the engineer at such a place, without first exercising ordinary care to ascertain the presence of passing teams in the road so near. If the presence of a passing team is discovered, due care should be exercised to avert injury to others. [Brown v. Mo. Pac. Ry. Co., 89 Mo. App. 192.]

While the case in its present posture concedes, and the verdict affirms, that Kenna, the engineer, was personally free from negligence in failing to observe the presence of Bush in the street, for it seems his view was obstructed, and in so sharply sounding the whistle, there is evidence suggesting the fireman should have known the true state of affairs. Notwithstanding this, the court set the verdict aside on the motion of defendant railroad for two reasons revealed in the record as follows: Because if defendant Kenna was

not negligent, as found by the jury, then there was no negligence on the part of defendant railroad company touching the same matter; and, second, because the verdict is against the evidence and the weight of the evidence.

The first ground assigned for setting aside the verdict implies that defendant could be negligent through the default of Kenna, the engineer, only. Because of this, it is argued the court erred and the verdict should be reinstated for the reason that, though the engineer was not negligent, defendant railway company was properly required by the verdict to answer for the fault of its fireman in omitting to observe the team and communicate the fright of the horses to the engineer in time to have prevented the sounding of the whistle. But it is urged on the part of defendant that as the court assigned as one ground for setting aside the verdict that it was against the evidence and the weight of the evidence, its discretion touching this matter is not open to review here. There can be no doubt that numerous authorities declare the rule in a general way that where the court sets the verdict aside because in its judgment it is against the weight of the evidence, the discretion touching the matter will not be reviewed on appeal unless it appears that such discretion was abused or arbitrarily exercised. But the rule thus frequently stated in general terms is more or less qualified by the effect of other decisions which declare that the appellate court will not review the action of the trial court in granting one new trial on the weight of the evidence in those cases only where there is a conflict in the testimony and substantial evidence touching the issue appears in favor of the party to whom the new trial is awarded. [See Loftis v. Met. St. R. Co., 220 Mo. 470, 119 S. W. 942; Friestatt Milling Co. v. Boggess, 80 Mo. App. 296; Rigby v. St. Louis Transit Co., 153 Mo. App. 330, 133 S. W. 110.] In other words, if there is no conflict in the

testimony touching the true issue and there appears
in the record no substantial evidence in support of a
verdict in favor of the party to whom the new trial
is awarded, the appellate court will review the matter
and may reinstate the verdict if it is found proper
to do so.   [See Ordelheide v. Berger Land Co., 208
Mo. 239, 106 S. W. 620.]   Conceding for the purpose
of the case that defendant Kenna was wholly unable
to see or discover Mr. Bush and his team on the street,
there is ample evidence from which the jury were au-
thorized to find defendant's fireman was remiss in his
duty to make observations for those on the thorough-
fare and communicate the fact to the engineer.   It is
shown that the fireman was at the north side of the
cab of the engine where the view was open to the ap-
proach of Bush, not more than fifty feet away at the
time.   Whether the fireman did or did not observe
the approaching team is wholly unimportant here, for
no one can doubt his duty to exercise ordinary care to
that end and promptly communicate the result of his
observations to the engineer.   His carelessness touch-
ing this obligation is sufficient to cast liability against
defendant railway company for the death of Bush re-
sulting directly therefrom, and it appears he made no
attempt to warn the engineer.   About the fireman's
situation in plain view of the approaching team, there
is no controversy or conflict in the case.   Indeed, touch-
ing this matter there is not a scintilla of evidence tend-
ing to show that the fireman was not negligent as to
the duty to exercise ordinary care to look out for the
safety of Bush.   This being true, the action awarding
a new trial for the reason it was against the evidence
and the weight of the evidence is not only open to re-
view here but should be treated with as an abuse of
discretion on the part of the trial court.   Obviously
the verdict is not against the evidence nor the weight
of the evidence when the fault of the fireman is shown
and no one attempts to deny it.   The fireman himself

was not placed upon the stand, but from this no presumption should be indulged, for there is no showing as to whether he still lives, is in defendant's employ or within the jurisdiction of the court.

Though the jury found defendant Kenna was not guilty of negligence because of the fact that his view was obstructed and that he was engaged in watching for signals from the conductor in the rear, there is enough in the case to entail liability against the railway company for the fault of the fireman. The order granting a new trial should, therefore, be reversed and the cause remanded with directions to the trial court to reinstate the verdict and enter judgment thereon as of the date the verdict was returned. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.